Charles J. Kocher, Esq. (NJ ID 016952004)
Matthew A. Luber, Esq. (NJ ID 017302010)
William L. Carr, Esq. (NJ ID No. 014112005)
Tyler J. Burrell, Esq. (NJ ID 377942021)
McOMBER McOMBER & LUBER, P.C.
39 East Main Street
Marlton, NJ 08053
(856) 985-9800
*Attorneys for Class Representative Plaintiff*
*Mia Tomasello, on behalf of herself and all others*
*similarly situated for the Rule 23(b)(3) Class and*
*FLSA Collective*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MIA TOMASELLO, on behalf of herself and all others similarly situated,<br><br>                                   Plaintiffs,<br><br>             v.<br><br>ICF TECHNOLOGY, INC.,<br>ACCRETIVE TECHNOLOGY GROUP,<br>INC.,<br><br>                                   Defendants. | Civil Action No.: |

## CLASS AND COLLECTIVE ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff Mia Tomasello ("Plaintiff") brings this wage and hour hybrid

Collective Action and Class Action Complaint under federal and state law on behalf

of herself and all other similarly situated Performers who provide online adult

streaming for Defendants ICF Technology, Inc. ("ICF") and/or Accretive Technology Group, Inc. ("ATG") (collectively "Defendants").

## PRELIMINARY STATEMENT

Defendants have misclassified their Performers, including Plaintiff, as "independent contractors" when they are, in fact, employees under federal and state law. As a result of this misclassification, Defendants have deprived their workers of the right to be paid the minimum wage and the protection against illegal deductions from pay.[1] The New Jersey Attorney General recently proclaimed "[w]hen employers misclassify workers, they shirk their responsibilities to fund vital social insurance programs administered by state and local governments, and the public pays the price."[2] Likewise, the United States Department of Labor has also warned "[m]isclassified workers are denied basic workplace protections including rights to minimum wage and overtime pay, making it harder for them to support themselves and their families. Lower pay caused by misclassification reduces workers' purchasing power, which undermines the entire economy."[3]

---

[1] https://nj.gov/labor/forms_pdfs/lsse/mw-899_520_missclassification11x17.pdf (last visited July 7, 2023).

[2] https://nj.gov/oag/newsreleases22/Brief_of_State_Attorneys_General_as_Amici_Curiae.pdf (last visited Oct. 24, 2022).

[3] https://blog.dol.gov/2022/06/03/misclassification-of-employees-as-independent-contractors-under-the-fair-labor-standards-act#:~:text=Misclassified%20workers%20are%20denied%20basic,which%20undermines%20the%20entire%20economy (last visited July 7, 2023).

Here, Plaintiff alleges that Defendants have subjected her and the Class/Collective members to improper pay practices by compensating them ***only*** for "paid chats" but not for the full period of time they are working, including "free chat" sessions when they are performing to attract customers for a "paid chat." In essence, these Performers are only paid for a part of the show. And Defendants track those paid minutes online as well as the total minutes online. This case is primed for class certification based on Defendants' own records.

Accordingly, Plaintiff brings this hybrid action with (i) a collective action under the FLSA; and (ii) a Rule 23(b)(3) class action for violations under the New Jersey law, including that New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, *et seq.*, New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. §§ 34:11-4.1, *et seq.*, and the corresponding regulations, to recover unpaid minimum wages and any unlawful deductions and/or unreimbursed business expenses.

## PARTIES

1.     Plaintiff Mia Tomasello resides in Jersey City, New Jersey. Plaintiff has been a performer for ICF from 2016 until the present.

2.     ICF is a Washington state corporation with a principal place of business at 800 Stewart Street, Seattle, Washington 98101. ICF operates a number of online social media platforms such as "streamate" that shares adult content on websites such as streamate.com. The domain streamate.com is held by ICF.

3.     ATG is a Washington state corporation with a principal place of business at 800 Stewart Street, Seattle, Washington 98101. This is the same address as ICF. ATG owns more than 10% of ICF's stock. According to ATG's website, it "is an established, fast-paced web company based in the heart of Seattle searching for world class talent for a variety of tech based careers. ***We are a market leader in web-based live video streaming***."[4] The IP address associated with www.streamate.com is registered to Accretive Networks, a d/b/a of ATG.

4.     Defendants misclassify their Performers[5] who provide live adult performances to their customers as independent contractors. Defendants are, at all relevant times, a joint employer of Plaintiff and the Class/Collective members under the FLSA and New Jersey law. In this regard, their operations are interrelated and unified, they share common management, centralized control of labor relations, common ownership, common control, common website, common business purposes, and interrelated business goals. In addition, they jointly determine and manage the pay practices, rates of employee pay and method of payment, maintenance of employee records and personnel policies, practices and decisions with respect to the employees.

---

[4] https://atg.applytojob.com/apply/ (last visited July 11, 2023) (emphasis added).
[5] "Performer" is a term utilized by ICF in its standard, uniform Agreement with Plaintiff and the Class/Collective members who are webcam performers who provide adult content on the internet.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over Defendants because they are the employers here under the FLSA and New Jersey law. During the class period, Defendants have employed over 40 performers in New Jersey who stream for Defendants.[6] Critically, while broadcast throughout the world, the streaming occurs in New Jersey, including at Plaintiff's Jersey City residence.

6.    This Court has jurisdiction under FLSA, which authorizes private actions to recover damages for violations of their wage and hours provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question).

7.    This Court has supplemental jurisdiction over the Rule 23 class claims under 28 U.S.C. § 1367. *Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012).

8.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

### Streamate Website

9.    Defendants operate a streaming website under the name Streamate.com

---

[6] https://www.streamatemodels.com/ (last visited July 7, 2023) (promoting 2,000 websites with 500 million visitors per month and over 10 million registered users). The Class and Collective are not just female. According to ICF, "Webcam models come in all sizes, sexes, ethnicities, and orientations." *Id.*

(hereinafter "Streamate"). Streamate is in the business of providing live, simulcast adult entertainment to its customers, as depicted in the image below:



10.    In or about 2016, Plaintiff registered online with Streamate, executed an Agreement with ICF, and thereafter began streaming live performances for Streamate.

11.    Streamate explains its services:

> At Streamate, you can chat with amateur performers while watching them live on camera. We have performers of every type! Search for any keyword or browse through our categories to find what you're looking for. You can interact with performers and create a unique experience just for you.
>
> If you see a performer you like, tap on the image to visit their profile and read more about them. If they're online and available, you'll see their free, live video and can start a conversation! You won't be charged unless you join a

paid chat session. The per-minute prices for paid chats are listed in your local currency before you enter the chat. Your Streamate membership is free, and there is no monthly or recurring fee to view the site.[7]

12.    Streamate explains how Performers make money:

When you start streaming, you'll be in free chat mode. Members can enter your room, chat, and see your video. If they take you into one of the types of paid chat, non-paying customers can't see what's going on. When the paid show ends, you'll go back to free chat.

Members may show extra appreciation by giving you a one-time payment of "Gold." These bonus amounts are usually small, but can add up! They can be given in both free chat or paid chat.

You'll get a set percentage of all the money spent in your room. The more time you spent in paid chat and the more Gold you get, the more you'll make each week![8]

13.    On Streamate, thumbnails of the Performers are visible, and customers choose which Performer's stream they join.

14.    Like other adult entertainment streaming services, customers join a live stream to watch the Performers and interact in a "free chat." From there, the Performer may engage with a person for continued viewing in a "paid chat."

15.    Plaintiff and the Class/Collective members are not compensated for their time outside of the "paid chat."

---

[7] https://streamate.com/support/faq (last visited July 13, 2023).
[8] https://www.streamatemodels.com/ (last visited July 13, 2023).

16.    Defendants track both "total minutes online" and "total paid minutes online" for Plaintiff and each Class/Collective member.

**Defendants Exert Control Over the Performers**

17.    While the Performer is the one attempting to entice the customers to pay, ICF exhibits significant control over the manner in which they do so by way of written rules in the Agreement it requires all Performers to sign and follow.

18.    The standard Agreements between the Performers and ICF, including the one signed by Plaintiff, provide rules on what the Performers may and may not do during a stream.

19.    By way of example but not limitation, Performers are prohibited from involving alcohol in a performance and displaying "below the waist" nudity in so called "free areas."

20.    Additionally, notwithstanding the explicit nature of Defendants' business, Performers are prohibited from engaging in any activity that is "inappropriate," which is solely determined by ICF. ICF has full control in determining what is and what is not allowed while a Performer is streaming and performing both inside and outside of "paid chats."

21.    Pursuant to a uniform Agreement with its Performers, ICF also requires that the images submitted by Performers to their website biographies be approved by ICF.

22.    Pursuant to a uniform Agreement with its Performers, ICF collects and captures biometric data from Plaintiff and the Class/Collective members.

23.    Pursuant to a uniform Agreement with its Performers, ICF uses the images and videos of Plaintiff and the Class/Collective members for Artificial Intelligence, including machine learning, "to train" and "to detect . . . if a room is empty."

24.    Pursuant to a uniform Agreement with its Performers, ICF restricts Plaintiffs and the Class/Collective members from promoting on any non-Streamate related websites.

25.    Pursuant to a uniform Agreement with its Performers, ICF may terminate the Agreement in its "complete sole discretion for any reason whatsoever . . . ."

26.    ICF tells the Performers what equipment can be used for their webcamming, including a computer, a webcam and an internet connection.[9]

27.    Performers must purchase this equipment for their work on

---

[9] https://www.streamatemodels.com/ (last visited July 7, 2023) ("You can start streaming with almost any modern computer running Windows or Mac OS! For the best video experience, we recommend a computer running an i7 processor (or equivalent) and at least 3 GB of RAM."); *id.* ("Any webcam will work, including a built-in laptop camera. To help you earn more attention, we recommend a widescreen webcam with HD quality video."); *id.* ("Any internet connection will get you started, but faster connections will ensure a better experience and higher quality video.").

streatmate.com on their own and are not reimbursed by Defendants.

28.    Performers must purchase their own costumes and props and are not reimbursed by Defendants.

29.    Despite ICF having the final say as to what Performers can and cannot do while streaming, Plaintiff's compensation is directly related, and wholly dependent, on her performance.

30.    Performers are only compensated for a fraction of the time in which they are working.

31.    Defendants take 70% of the tips, called "Gold" on Streamate for Plaintiff and the Class.

### Defendants' Unlawful Payment Practices

32.    Performers, such as Plaintiff, begin their work by removing above-the-waist clothing or putting on a costume or other adult attire for webcamming, setting up their equipment, logging into Streamate, and then starting a stream. This is a benefit to Defendants. Defendants do not compensate Plaintiff or the Performers for this time.

33.    Upon beginning her "stream," Plaintiff turns on her camera and attempts to entice customers to join her private stream. Despite this being the period where Plaintiff is exerting the most energy and effort in her performance, that is, performing potentially explicit acts in order to entice customers to join a "paid chat,"

Plaintiff is **not** compensated for this time.

34.    Customers can view a preview of her stream, but join the private stream by clicking "Go Private" and paying per minute:



35.    Performers' compensation begins after, **and only after**, a customer joins the private stream and the customers submit the first payment.

36.    As a result of Defendants' payment practices, Performers are only compensated for a fraction of the work hours they provide to Defendants.

37.    As an exemplar period only, according to ICF's own business records, for the week beginning on January 15, 2023, despite Plaintiff working online for 170 minutes as a Performer, she **was only** paid for 72 minutes – or 42% of her total online time working.

38.    This payment practice results in Plaintiff's realized earnings, based on the actual number of hours worked (the total time online), **far below** the applicable

minimum wage, which is detailed in the chart below:

| Year | FLSA | New Jersey |
|---|---|---|
| 2016 | $7.25 | $8.38 |
| 2017 | $7.25 | $8.44 |
| 2018 | $7.25 | $8.60 |
| Jan. 1 to June 30, 2019 | $7.25 | $8.85 |
| Jul. 1 to Dec. 31, 2019 | $7.25 | $10.00 |
| 2020 | $7.25 | $11.00 |
| 2021 | $7.25 | $12.00 |
| 2022 | $7.25 | $13.00 |
| 2023 | $7.25 | $14.13 |

39.     By way of another example, but not limitation, over the course of a two-week period in January 2023, Plaintiff worked a total of 7.1 hours as a Performer but was only paid for 5.4 hours. This excludes the time working in the free chat session.

40.     For the time Plaintiff actually worked, rather than her paid time, Plaintiff was paid $48.20, which equates to just $6.79 per hour, an amount well below the applicable minimum wage during the applicable time period.

41.     The table below contains a breakdown of the time Plaintiff spent working in comparison to the time she was paid:

| Check Date | Total Hours Online | Paid Hours Online | Paid Wages | Functional Hourly Wage [*Paid Wages]/[Total Hours Online]* |
|---|---|---|---|---|
| 1/14/2023 | 4 | 2.93 | $23.45 | $5.86 per hour |
| 1/7/2023 | 3.1 | 2.47 | $24.75 | $7.98 per hour |

42.     In sum, due to Defendants' pay practices, Performers are paid a sub-

minimum wage.

43.    In addition, Defendants profit off their employees by maintaining control over their intellectual property.

44.    There are periods when Plaintiff is working online and paid nothing.

45.    Defendants track and monitor when Plaintiff is online, with metrics such as "total minutes online" (denoting all online time) and "total paid minutes online" (denoting when customers are paying for a private stream or chats), as set forth in the screenshot below:



46.    Pursuant to a common, uniform Agreement, ICF and/or ATG can record Plaintiff while she is performing and may use the recordings for their marketing and advertisements.

47.    Plaintiff receives no additional compensation for ICF's continued

dissemination of her performances.

48.    As detailed above, Defendants exerted substantial control over the most basic aspects of Plaintiff's work. For example, ICF directed Plaintiff on what equipment to use; directed Plaintiff as to what she could and could not do while performing; made decisions on whether content was "appropriate" or not; and prohibited Plaintiff from advertising her social media accounts or private websites.

49.    The Performers' work was performed within ICF's places of business, that is, the virtual meeting rooms and websites owned and operated by Defendants.

50.    The work performed by Performers, providing adult entertainment, is the same business provided by and engaged in by Defendants.

51.    Performers do not have a specialized skill. In fact, the Streamate website purports, "You only need three pieces of equipment to get started: a webcam, a computer, and an internet connection. That's it! *No technical skills required*."[10]

52.    Defendants set the pay to Plaintiff and the Class/Collective members.[11]

53.    Defendants misclassified Plaintiff and the Class & Collective members knowingly and willfully.

54.    Defendants paid Plaintiff and Class & Collective members under a common compensation plan and policy where the Performers were paid for only a

---

[10] https://www.streamatemodels.com/ (last visited July 7, 2023) (emphasis added).
[11] https://www.streamatemodels.com/#section-learnmore (last visited July 7, 2023) ("You'll get a set percentage of all the money spent in your room.").

fraction of the time they spent working for ICF as a Performer.

55.    As a direct and proximate result of Defendants' misclassification, Defendants failed to pay Plaintiff and Class & Collective members the required minimum wage under federal and state law.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

### FLSA Nationwide Collective Action Under 29 U.S.C. § 216(b)

56.    Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this FLSA Collective Action as an "opt-in" on behalf herself and similarly situated Performers, which is defined as the following (hereinafter "Nationwide Collective"):

> All current and former individuals who were employed as Performers by ICF Technology, Inc. or Accretive Technology Group, Inc. at any time three (3) years prior to the filing of this action through the entry of judgment in this action, and who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Nationwide Collective").

57.    Plaintiff and the Nationwide Collective members are similarly situated in that they all performed the same basic duties and assignments as described above. They were all subject to Defendants' common policies and practices, many of which are contained in the uniform Agreement.

58.    Plaintiff and the Nationwide Collective members were improperly classified as independent contractors, which resulted in the failure to receive the appropriate federal minimum wage.

59.     The key legal issue in the collective action – whether Defendants'
classification policy and payment practices violate the FLSA – does not vary from
Nationwide Collective member to member.

60.     Defendants violated the FLSA by failing to pay Performers the
minimum wage which they are entitled to and for misclassifying them.

61.     Defendants' violations of the FLSA were willful, repeated, knowing,
continuing and intentional, and economically damaged Plaintiff and the putative
party plaintiffs of the Nationwide Collective.

62.     Pursuant to 29 U.S.C. §§ 206(a)(1) and 216(b), Defendants are
individually and/or jointly liable to Plaintiff and the Nationwide Collective members
for the full amount of unpaid minimum wages plus an additional equal amount as
liquidated damages, plus the attorneys' fees and costs.

**Class Action Under Fed. R. Civ. P. 23**

63.     This action is brought by Plaintiff as a class action pursuant to Fed. R.
Civ. P. 23(b)(3) and for all claims asserted herein, on behalf of herself and the
following, initially defined, Class:

> All current and former individuals who work or have
> worked as Performers for ICF Technology, Inc. and/or
> Accretive Technology Group, Inc. in the State of New
> Jersey at any time six (6) years prior to the filing of this
> Action through the entry of judgment in this Action
> ("Class").

64.     The claims brought pursuant to New Jersey State Law may be pursued

16

by all similarly situated persons who do not opt-out of the Class Action pursuant to Rule 23.

65. **Numerosity** – Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, including discovery of Defendants' records, the Class is so numerous that the joinder of all members is impracticable. The Class is comprised of an easily ascertainable set of persons or entities who created webcam content for Defendants during the Class Period.

66. **Commonality & Predominance** – There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. Questions of law and fact are common to all Class members because, *inter alia*, this action concerns Defendants' common business policies, as described herein, these common questions of law and fact include, without limitation:

    a. Whether Defendants engaged in the conduct as alleged herein;

    b. Whether Defendants paid their Performers for all time worked online;

    c. Whether Plaintiff and the Class members were misclassified as "independent contractors" when they were actually employees;

    d. Whether Plaintiff and the Class members were deprived the

protections of employee status under the law; and

  e. Whether Plaintiff and the Class members are entitled to damages, and the amount of such damages.

67. **Typicality** – Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, performed and created web cam content for ICF and/or ATG.

68. **Adequacy of Representation** – Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are experienced in consumer class-action litigation. Plaintiff has no interests which are adverse to, or in conflict with, other members of the Class.

69. **Superiority of Class Action** – A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, a class action presents far fewer management difficulties, conserves judicial as well as the parties'

resources and protects the rights of each Class member.

70.    Defendants willfully violated federal and New Jersey State Law.

71.    Plaintiff and the Class members she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policies, practices, and customs regarding Defendants' classification and pay practices.

<u>**COUNT I**</u>

**THE FAIR LABOR STANDARDS ACT OF 1938**
**MINIMUM WAGE VIOLATIONS**
<u>***(On Behalf of Plaintiff and the FLSA Nationwide Collective)***</u>

72.    All previous paragraphs are incorporated as though fully set forth herein.

73.    The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a).

74.    At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§206(a) and 207(a). Thus, Defendants are subject to the FLSA's minimum wage requirements.

75.    At all relevant times, Defendants have either employed, and/or continue

to employ, Plaintiff and each of the Nationwide Collective members within the meaning of the FLSA.

76.    At all relevant times herein, Plaintiff and the Nationwide Collective have been entitled to the rights, protections, and benefits provided under the FLSA.

77.    At all relevant times, ICF and/or ATG failed to compensate Plaintiff and the Nationwide Collective members for all hours worked to an extent that it diminishes these employees' wages below the applicable minimum wage.

78.    As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.

79.    Defendants knew or should have known that their pay policies and practices would result in failure to compensate Plaintiff and the Nationwide Collective members at the applicable minimum wage.

80.    Defendants have violated and/or continue to violate, the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

81.    Defendants have neither acted in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid

minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find either ICF or ATG not liable for liquidated damages, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

82.    Due to the aforementioned FLSA violations, Plaintiff, on behalf of herself and the members of the Nationwide Collective, are entitled to recover from Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b), as well as prejudgment and post-judgment interest.

## COUNT II

**NEW JERSEY WAGE AND HOUR LAW**
**MINIMUM WAGE VIOLATIONS**
*(On Behalf of Plaintiff and the Rule 23(b)(3) Class)*

83.    All previous paragraphs are incorporated as though fully set forth herein.

84.    Plaintiff and Class members are employees entitled to the NJWHL's protections.

85.    Defendants are employers under the NJWHL. N.J.S.A. § 34:11-56a1.

86.    Defendants are joint employers under New Jersey law.

87.    At all relevant times, Defendants have employed, and/or continue to

21

employ Plaintiff and each member of the Class within the meaning of the NJWHL.

88.     Pursuant to the NJWHL, the Defendants were required to pay Plaintiff and the Class members all wages, when due, for all hours of work at hourly rates equal to the minimum wage rate under the NJWHL on their regular pay date. N.J.S.A. § 34:11-56a4.

89.     Employers must pay employees "for all hours worked." N.J.A.C. § 12:56-5.1.

90.     "Hours worked" includes all time that employers require their employees to "be at his or her place of work." N.J.A.C. § 12:56-5.2(a).

91.     Plaintiff and Class members' time spent online and engaging customers before entering private streams constitutes "hours worked" under the law, thus, ICF's failure to pay wages for said hours violates the NJWHL.

92.     Defendants failed to pay Plaintiff and the Class members for all hours worked, and thus failed to comply with this statute and its accompanying administrative code. *Id.*

93.     As alleged herein, Defendants failed to compensate Plaintiff and other Class members for all of the time they performed for the benefit of Defendants.

94.     Defendants knew or should have known that their pay policies and practices would result in a failure to compensate Performers at the New Jersey minimum wage.

95.     The foregoing conduct, as alleged, constitutes willful violations of the NJWHL.

96.     As a result of the foregoing conduct, as alleged, Defendants have failed to pay wages under the NJWHL thereby violating and continuing to violate the NJWHL.

97.     Defendants have violated New Jersey State Law, including but not limited to the NJWHL, NJWPL, amended in part by the Wage Theft Act, and corresponding New Jersey Code provisions by failing to "pay wages when due and as required by law" for six years prior to the date the claim for wages is filed. N.J.S.A. 34:11-58. Defendants have unlawfully withheld and/or diverted a portion of Plaintiff's and the Performers' wages in violation of New Jersey's Wage Payment Law, N.J.S.A. 34:11-4.4(a); *see also* N.J.A.C. 12:55-2.1(a).

98.     Due to the Defendants' violations, Plaintiff, on behalf of herself and the Class members, has sustained losses and lost compensation as a proximate result of Defendants' violations, and are entitled to recover the amount of unpaid minimum wages, liquidated damages, attorneys' fees and costs, as well as pre-judgment and post-judgment interest.

## COUNT III

### NEW JERSEY WAGE PAYMENT LAW
### WAGE VIOLATIONS
### *(On Behalf of Plaintiff and the Rule 23(b)(3) Class)*

99.    All previous paragraphs are incorporated as though fully set forth herein.

100.    Plaintiff and the Class members are employees entitled to the NJWPL's protections.

101.    Defendants are employers under the NJWPL.

102.    Defendants are joint employers under New Jersey law.

103.    The NJWPL requires that Plaintiff and other Class members receive all wages owed. N.J.S.A. 34:11-4.2.

104.    The NJWPL generally provides that "[n]o employer may withhold or divert any portion of employee's wages." N.J.S.A. 34:11-4.4.

105.    The NJWTA amendments to the NJWHL and NJWPL explicitly authorize a private right of action for unpaid wages. N.J.S.A. 34:11-4.110 ("the employee may recover in a civil action the full amount of any wages due" under the NJWHL and NJWPL).

106.    As stated herein, Defendants failed to compensate Plaintiff and Class members for all hours worked.

107.    Accordingly, Defendants have failed to pay and/or withheld wages,

constituting a violation of the NJWPL.

## COUNT IV

### NEW JERSEY WAGE PAYMENT LAW
### UNLAWFUL DEDUCTIONS
### *(On Behalf of Plaintiff and the Rule 23(b)(3) Class)*

108.   All previous paragraphs are incorporated as though fully set forth herein.

109.   Plaintiff and the Class members are employees entitled to the NJWPL's protections.

110.   Defendants are employers covered by the NJWPL that are required to pay Plaintiff and the Class members in accordance with the NJWPL.

111.   The NJWPL generally provides that "[n]o employer may withhold or divert any portion of an employee's wages." N.J.S.A. § 34:11-4.4.

112.   By forcing Plaintiff and Class members to purchase specified equipment in order to stream, without reimbursement for same, Defendants have unlawfully diverted wages from Plaintiff and Class members.

113.   By retaining 70% of Plaintiff and the Class members' tips, called Gold on Streamate, Defendants have unlawfully withheld or diverted Plaintiff and the Class members' wages and/or tips that are their property and not the property of their employer.

114.   Defendants have violated the NJWPL by subjecting Plaintiff and other

Class members to the unlawful wage diversions in violation of the NJWPL, including any unlawful deductions for Performer charges and/or unreimbursed expenses for computer(s), web cameras, and/or internet service provider charges, among others.

115.    Defendants' unlawful deductions from Plaintiff and the Class members' wages denied/denies them compensation to which they were/are legally entitled to receive.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Class/Collective members, respectfully requests the Court grant the following relief:

A.    Certification of this action as a collective action on behalf of the Nationwide Collective, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b);

B.    Certification of the action as a class action under Rule 23 on behalf of the Class;

C.    Designation of Plaintiff as representative of the Nationwide Collective and the Class;

D.      Designation of Plaintiff's counsel as class counsel;

E.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and New Jersey State Law and that Defendants' violations as described above are to be found willful;

F.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

G.      An award of unpaid minimum wages to Plaintiff and the members of the Nationwide Collective and the Class;

H.      An award of liquidated damages to Plaintiff and members of the Nationwide Collective and the Class.

I.      That Defendants be ordered and enjoined to pay restitution of unpaid wages to Plaintiff and the Nationwide Collective and the Class;

J.      An award of costs and expenses of this action together with reasonable attorneys' fees to Plaintiff and members of the Nationwide Collective and the Class; and

K.      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Mia Tomasello, on behalf of herself and all others similarly situated, hereby demands a jury trial with respect to all issues triable of right by jury.

## **CERTIFICATION**

It is hereby certified pursuant to 28 U.S.C. § 1746 and pursuant to L.Civ.R. 11.2 that the matter in controversy is not presently the subject of any other action pending in any court or of an arbitration proceeding to date.

Dated: July 13, 2023          By:     */s/ Charles J. Kocher*
                                        Charles J. Kocher, Esq. (NJ ID 016952004)
                                        Matthew A. Luber, Esq. (NJ ID 017302010)
                                        William L. Carr, Esq. (NJ ID No. 014112005)
                                        Tyler J. Burrell, Esq. (NJ ID 377942021)
                                        McOMBER McOMBER & LUBER, P.C.
                                        39 East Main Street
                                        Marlton, NJ 08053
                                        (856) 985-9800
                                        cjk@njlegal.com
                                        mal@njlegal.com
                                        wlc@njlegal.com
                                        tjb@njlegal.com

                                        *Attorneys for Class Representative Plaintiff Mia Tomasello, on behalf of herself and all others similarly situated for the Rule 23(b)(3) Class and FLSA Collective*