# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MIA TOMASELLO, on behalf of herself, individually and on behalf of all similarly situated individuals,<br><br>*Plaintiffs,*<br><br>v.<br><br>ICF TECHNOLOGY, INC., ACCRETIVE TECHNOLOGY GROUP, INC.,<br><br>*Defendants.* | Civ. No. 2:23-cv-03759-MCA-JRA<br><br><br>Jury Trial Demanded |

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

## **<u>TABLE OF CONTENTS</u>**

I.  INTRODUCTION ......................................................................................1

II.  FACTUAL BACKGROUND.................................................................3

III.  ARGUMENT..........................................................................................11

    A.  The Proposed Class .........................................................................11

    B.  Class Certification is Proper Under Rule 23(a) ................................12

        1.  The Proposed Class is Sufficiently Numerous .........................12

        2.  Plaintiffs' Claims Present Questions of Law and Fact
             Common to the Class ................................................................13

        3.  Plaintiff's Claims are Typical of Those of the Class
             Members...................................................................................16

        4.  Plaintiff and Class Counsel Will Fairly and Adequately
             Represent the Class ..................................................................17

    C.  Class Certification is Proper Under Rule 23(b)(3)............................19

        1.  The Proposed Class is Ascertainable .......................................20

        2.  Common Issues Predominate....................................................21

        3.  Class Action Superiority ..........................................................26

        4.  Rule 23(g) Appointment of Class Counsel is Warranted .........29

IV.  CONCLUSION.....................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agostino v. Quest Diagnostics, Inc.*,
  256 F.R.D. 437 (D.N.J. 2009)................................................................20

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................12, 18, 26

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)................................................................21

*Ansoumana v. Gristedes Operating Corp.*,
  201 F.R.D. 81 (S.D.N.Y. 2001) ................................................................22

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ................................................................13, 16

*Barr v. Harrah's Entertainment, Inc.*,
  242 F.R.D. 287 (D.N.J. 2007)................................................................16

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006) ................................................................16

*Boley v. Universal Health Servs., Inc.*,
  36 F.4th 124 (3d Cir. 2022) ................................................................16

*Byrd v. Aaron's Inc.*,
  784 F.3d 154 (3d Cir. 2015) ................................................................20

*Caddick v. Tasty Baking Co.*,
  No. 2:19-cv-02106, 2021 U.S. Dist. LEXIS 206991 (E.D. Pa. Oct.
  27, 2021) ................................................................18, 29

*Carr v. Flowers Foods, Inc.*,
  No. 15-6391, 2019 U.S. Dist. LEXIS 77541 (E.D. Pa. May 7,
  2019) ................................................................14

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013) ................................................................20

*Carroll v. Stettler*,
No. 10-2262, 2011 U.S. Dist. LEXIS 121171 (E.D. Pa. Oct. 19, 2011) (appointing Charles J. Kocher as class counsel and certifying class) ..................................................................................................18

*Casco v. Ponzios RD, Inc.*,
2018 U.S. Dist. LEXIS 73869 (D.N.J. Apr. 29, 2018)..........................12, 18, 28

*Crawford v. FHG Realty Urban Renewal LLC*
(D.N.J. Mar 15, 2019)..................................................................................18

*D'Alauro v. GC Servs. Ltd. P'ship*,
168 F.R.D. 451 (E.D.N.Y. 1996).................................................................27

*DeGidio v. Crazy Horse Saloon & Rest., Inc.*,
4:13-CV-02136, 2017 U.S. Dist. LEXIS 219018 (D.S.C. Jan. 26, 2017), *aff'd and remanded sub nom. Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135 (4th Cir. 2018), *cert. denied sub nom. Crazy Horse Saloon & Rest., Inc. v. Degidio*, 138 S. Ct. 2666 (2018) ........................................................................................................22

*Doe v. Banc, Jack & Joe LLC*,
Civ No. 17-cv-03843, 2020 U.S. Dist. LEXIS 95129 (D.N.J. June 1, 2020) ....................................................................................................29

*Ehret v. Uber Techs., Inc.*,
148 F. Supp. 3d 884 (N.D. Cal. 2015)........................................................27

*In re Flat Glass Antitrust Litig.*,
191 F.R.D. 472 (W.D. Pa. Nov. 5, 1999) ...................................................28

*Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n*,
446 U.S. 318 (1980)...................................................................................12

*General Telephone Co. of the Southwest v. Falcon*,
457 U.S. 147 (1982)...................................................................................12

*Goldman v. Radioshack Corp.*,
Civ No. 03-0032, 2005 U.S. Dist. LEXIS 8742 (E.D. Pa. May 10, 2005) ........................................................................................................22

*Hall v. Adelphia Three Corp.*,
No. 1:21-cv-01106 (D.N.J. 2024)..........................................................18, 29

*Hargrove v. Sleepy's, LLC*,
220 N.J. 289 (2015) ...................................................................24

*Hargrove v. Sleepy's LLC*,
974 F.3d 467 (3d Cir. 2020) .......................................................17

*Hargrove v. Sleepy's LLC*,
Civ. No. 22-2040, 2023 U.S. App. LEXIS 14553 (3d Cir. June 12,
2023) .................................................................2, 14, 25, 28

*Hart v. Rick's Cabaret Int'l Inc.*,
09 Civ. 3043, 2010 U.S Dist. LEXIS 137129 (S.D.N.Y. Dec. 20,
2010) .................................................................*passim*

*Huber v. Simon's Agency, Inc.*,
84 F.4th 132 (3d Cir. 2023) .......................................................21

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2009) .......................................................12

*King Drug Company of Florence Inc. v. Cephalon, Inc.*,
309 F.R.D. 195 (E.D.Pa. 2015).....................................................26

*Maia v. IEW Constr. Grp.*,
257 N.J. 330 (N.J. 2024) ...........................................................13

*Mendoza v. La Belle Farm. Inc.*,
239 F.R.D. 363, 373 (S.D.N.Y. 2007) ...........................................21

*In re Mercedes-Benz Antitrust Litig.*,
213 F.R.D. 180 (D.N.J. 2003).......................................................27

*In re Modafinil Antitrust Litig.*,
837 F.3d 238 (3d Cir. 2016) .......................................................13

*Neale v. Volvo Cars of North Am., LLC*,
794 F.3d 353 (3d Cir. 2015) ...........................................17, 21, 23

*Ramcharan v. A.F.L. Quality, Inc.*,
No. 1:12-cv-07551, 2014 U.S. Dist. LEXIS 124441 (D.N.J Sep. 5,
2014) .................................................................20

*Renig v. RBS Citizens, N.A.*,
    912 F.3d 115 (3d. Cir. 2018) ...............................................................15

*Reyes v. Netdeposit, LLC*,
    802 F.3d 469 (3d Cir. 2015) ...............................................12, 13, 14

*Rivet v. Office Depot, Inc.*,
    207 F. Supp. 3d 417 (D.N.J. 2016)....................................................22

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013) ..............................................................13

*Senne v. Kansas City Royals Baseball Corp.*,
    934 F.3d 918 (9th Cir. 2019) .............................................................25

*Summerfield v. Equifax Info. Servs. LLC*,
    264 F.R.D. 133 (D.N.J. 2009)............................................................21

*Univ. of P.R. Ret. Sys. v. Lannett Co.*,
    No. 21-3150, 2023 U.S. App. LEXIS 9143 (3d Cir. April 18, 2023) ...............23

*Verma v. 3001 Castor, Inc.*,
    Civ. No. 13-3034, 2016 U.S. Dist. LEXIS 164026 (E.D.Pa. Nov.
    29, 2016) ........................................................................................29

*Wal-Mart Stores, Inc. v. Dukes*,
    56 U.S. 338 (2011)............................................................................14

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ......................................................15, 26

*Weisfeld v. Sun Chem. Corp.*,
    210 F.R.D. 136 (D.N.J. 2002)...........................................................16

*Wetzel v. Liberty Mut. Ins. Co.*,
    508 F.2d 239 (3d. Cir. 1975) ............................................................17

*Williams v. Jani-King of Philadelphia Inc.*,
    837 F.3d 314 (3d Cir. 2016) .........................................2, 14, 15, 22

*Zinberg v. Washington Bancorp, Inc*,
    1385 F.R.D. 397 (D.N.J. 1990).........................................................17

**Statutes**

FLSA ...................................................................................................18

New Jersey Wage and Hour Law.................................................................1, 2, 17

New Jersey Wage Payment Law.................................................................1, 2, 17

**Rules**

Rule 23 ...................................................................................*passim*

## I.    INTRODUCTION

Class Representative Plaintiff Mia Tomasello moves to certify this Rule 23(b)(3) Class brought under the New Jersey wage and hour law for the following: All persons who, at any time from August 6, 2019 continuing through entry of judgment in this case, worked as Performers for ICF Technology, Inc. and/or Accretive Technology Group, Inc. in New Jersey and were classified as independent contractors under their Performer Agreements.

Plaintiff and the Class Members perform on a live adult chat website platform called Streamate. Plaintiff alleges that Defendants misclassified them as independent contractors. Because they are actually employees, Plaintiffs allege Defendants violated the New Jersey Wage Payment Law ("WPL") and Wage and Hour Law ("WHL") by failing to pay them wages for time working in the "free chat," which is where Streamate member-customers enter a Performer's chat room, chat, and see their stream. At this point, certain nudity (above-the-waist) is permitted in the free chat, among other acts. As the Director of Marketing testified: "you name it, they probably can do it." Ex. A, Rekevics Tr. 64:14-15. If the Streamate member-customer takes a Performer into one of the types of "paid chat," then non-paying customers cannot see what is happening. Full-nudity, among other acts and fetishes, is permitted in the paid chat. When the paid chat ends, the Performer goes back to free chat. But they are not paid for the time spent in the free chat where Plaintiffs are

enticing Streamate member-customers to spend their money. Defendants also keep the lion's share of Plaintiffs' tips (called "Gold") – up to 65%, even though employers may not keep any portion of them under New Jersey law. Tips are the sole property of the employee; they were withheld here on a class-wide basis.

Under New Jersey law, the "ABC" test is the framework to decide whether a person seeking the protection of the WHL and WPL is an independent contractor or an employee. The "ABC" test presumes that the claimant is an employee and imposes the burden to prove otherwise on the employer. According to the Third Circuit, "the 'ABC' test often turns on evidence of an employer's policies and practices, and so often presents a common issue." *Hargrove v. Sleepy's LLC*, Civ. No. 22-2040, 2023 U.S. App. LEXIS 14553, at *5 (3d Cir. June 12, 2023) (citing *Williams v. Jani-King of Philadelphia Inc.*, 837 F.3d 314, 321 (3d Cir. 2016)). This is true here, as common evidence will reveal who is right about employee status.

Class certification is also warranted because liability can be determined with common evidence. Plaintiffs allege that Defendants uniformly (1) do not pay Plaintiff and the Class Members for the time they are working in the free chat space on the Streamate platform; and (2) retain the lion's share of their tips. These two practices are not in dispute and are admitted in Defendants' Answer. Answer, ECF No. 30 ¶¶ 15, 31. Plaintiffs will use common evidence, including *inter alia* Defendants' own payroll records, to show that the claims can be productively

litigated in one stroke. The questions of whether Plaintiffs were misclassified as independent contractors; whether the free chat time is compensable; and whether the retention of tips is unlawful are all common to the Class. Ultimately, if Defendants are liable to Plaintiff for unpaid wages and/or unlawfully retained tips, they will be liable to all Class Members. The only remaining question is the damages calculation, which is not a barrier to class certification.

## II.    FACTUAL BACKGROUND

### A. Common Evidence Demonstrates that Plaintiff and the Class Members are not Paid for Their Time Working in the Free Chat on the Streamate Website and That Defendants Withheld Their Tips

Defendants operate a streaming website under the name Streamate.com ("Streamate"). Streamate is in the business of providing "live, adult entertainment to its customers." First Amended Complaint ("FAC"), ECF No. 29 ¶ 9; Answer, ECF No. 30 ¶ 9. In 2016, Plaintiff registered online with Streamate, executed a "Performer agreement" ("Agreement") with Defendant ICF, and thereafter began streaming live performances for Streamate. FAC, ECF No. 29 ¶ 10; Ex. B, Agreement at DEF_000005. Defendants require all Performers to execute the Agreement, and all Performers are subject to its terms. Answer, ECF No. 30 ¶ 4 ("Defendants admit only that ICF requires that performers execute a performer agreement prior to accessing and using ICF's Streamate platform."); Ex. C, Glogowski Tr. 44:15-17 (Q. "And does the agreement in place at the time of signup

3

apply uniformly to all performers?" A. "Yes."); 44:24-45:3 (Q. "And performers with the United States. Say in New Jersey and Florida are signing the same agreement?" [Objection] A. "Correct.").

On Streamate, thumbnails of the Performers are visible, and customers choose which Performer's stream they join. Customers join a live stream to watch the Performers and interact in a "free chat." As Defendants explain on their website, "[w]hen you start streaming, you'll be in free chat mode. Members can enter your room, chat, and see your video." https://www.streamatemodels.com/ (last visited Aug. 5, 2024).  If the customer takes the Performer into a paid chat, non-paying customers cannot see the stream. *Id.* When the paid show ends they go back into the free chat. *Id.*; Ex. A, Rekevics Tr. 61:25-62:12.

This class action seeks to recover unpaid wages for time spent working for Streamate in the free chat space. In free chat, Plaintiff and the Class Members work by performing, sometimes without clothing above-the-waist, until a customer decides to pay them. Ex. D, Tomasello Tr. 253:25-254:12 (A. "It's really just you perform until you get a customer to pay for your performance, so you're just working for free until a customer decides to pay you, and then you just do extra, but it's all a performance. You're sitting there, you're in front of a camera, … you have to engage with customers so." Q. "So paid chat?" A. "No you have to engage with customers even in free chat, so – Q. "Right. I'm asking about –" A. "that's why I hired

lawyers."); 273:6-10 ("Q. In the free chat space for Streamate, have you ever taken off your top? A. "Free chat, yes." Q. "Okay. Would that be commonplace? A. Yes."); Ex. A, Rekevics Tr. 64:24-65:2 ("Topless" "okay at this time" in free chat).

Defendants tell Plaintiffs to mention their "special interests or kinks" in their profile and "add some pictures to your gallery to 'DRAW IN A CROWD.'" Ex. E, Tomasello Ex. 18 at DEF_000470. Defendants also direct Plaintiffs to "[l]et [customers] know your specialties and invite them to start a show, or ask them about themselves." Ex. E at DEF_000471. Defendants tell Plaintiffs to "EXPAND YOUR PROP COLLECTIONS" and that "[v]iewers love seeing lingerie, costumes, and toys!" Ex. E at DEF_000472. Plaintiff Tomasello testified that the version of this that she read directed her to "have stockings, have handcuffs, have accessories. Like, if you don't have lingerie, get a pair of jeans and have a pair – you know, anything to make it look sexy." Ex. D, Tomasello Tr. 222:15-19. Plaintiff testified that she purchased lingerie, dresses, shoes and stockings, among other items such as a laptop. Ex D, Tomasello Tr. at 246:19-22; 135:13-137:15; 245:7-246:5 (describing fetish and humiliation acts).

Defendants require that Plaintiffs purchase certain equipment, including a computer, a webcam and an internet connection. Answer, ECF No. 30 ¶ 26. Plaintiff and the Performers are not reimbursed for this web-streaming equipment. *Id.* ¶ 27.

Plaintiffs are also required to purchase their own costumes and props, and are not reimbursed. FAC, ECF No. 29 ¶¶ 26-28; Ex. B, Agreement at DEF_000005 § (L).

This is for Defendants' benefit since Plaintiffs are performing to generate revenue for Defendants by entertaining Streamate customers and by expanding their customer base. Ex. D, Tomasello Tr. 251:9-10 ("I was working hard for Streamate to make all the money."); Ex. A, Rekevics Tr. 66:1-25 (free chat is "marketing tool" and "actions of the performers in the free chat space will entice, many times, customers to make purchases, such as the private option").

In their Answer, "Defendants admit that ICF does not pay performers for time spent in the free chat." Answer, ECF No. 30 ¶ 15. The common question as to the whether this is permissible under New Jersey wage and hour law can be decided with common evidence to yield a common answer for the Class.

### B.    Common Evidence Demonstrates that Defendants Unlawfully Retained Plaintiffs' Tips Called "Gold"

Customers have the discretion to tip Plaintiffs in "Gold" – a Streamate currency. *See* https://www.streamatemodels.com/ (last visited Aug. 5, 2024) ("Members may show extra appreciation by giving you a one-time payment of 'Gold.' These bonus amounts are usually small, but can add up! They can be given in both free or paid chat." "The more time you spent in paid chat and the more Gold you get, the more you'll make each week."). Ms. Glogowski testified that Gold is a "method of compensating the performer" by the customer who makes the decision

whether to give Gold. Ex. C, Glogowski Tr. 85:21-86:2. Plaintiff Tomasello testified that she "could say tip or I could [say] give me gold, the customer will know what I'm talking about." Ex. D, Tomasello Tr. 68:12-14. She also testified that the customer decides whether to tip and the amount. Ex. D, Tomasello Tr. 281:24-282:7.

This Class action is also brought to recover the unlawfully retained tips, as Plaintiff Tomasello testified. Ex. D, Tomasello Tr. 67:11-13 ("If a customer wants to tip us, give us extra money tips, th[en] Streamate takes a percentage of it. We don't get all of our tips."). Streamate maintains common payroll records that shows tips/Gold given on one hand, and tips/Gold retained on the other. These records are maintained for all Class Members. Plaintiffs also seek unreimbursed business expenses given the alleged unlawful misclassification. Answer, ECF No. 30 ¶ 114.

### C. Common Evidence Demonstrates that Plaintiffs are Subject to Defendants' Monitoring, Control, Discipline, and can be Terminated at any Time

The Agreement is common evidence that applies to Plaintiff and all Class Members. Defendants produced all six (6) versions of the Agreement, which are nearly identical. Ex. B at DEF_000001, 16, 22, 28, 36, 45. Importantly, ICF may terminate the Agreement in its "sole discretion for any reason whatsoever." FAC, ECF No. 29 ¶ 25; Ex B., Agreement at DEF_000005 § (N).

The common Agreements are the source of Defendants' right to, and exercise of, control over Performers from the beginning to end. Defendants must first approve

of the images submitted by Performers to their website biographies. Ex. B, Agreement at DEF_000005 § (J)(9). The Agreement sets the rules for a stream. The Agreement prohibits Performers from displaying "below the waist" nudity in so called "free areas." Ex. B, Agreement at DEF_000005 § (J)(6). The Agreement also prohibits activity that is "inappropriate" which is solely determined by Defendants. Defendants have full control in determining what is and what is not allowed while a Performer is streaming and performing both inside and outside of "paid chats." FAC, ECF No. 29 ¶ 20; Ex. B, Agreement at DEF_00005 § (J)(8). Defendants have control of how and when a Performer is disciplined, and categorizing their rules as "No Tolerance Rules," "Three-Strike Rules," and behavior that is "Allowed With Some Exceptions." Ex. F, Streaming Rules FAQ at DEF_000701-DEF_000708.

The Compliance Handbook sets forth a "Violations Guide" for Defendants' Compliance personnel ███████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ Ex. G, Compliance Handbook at DEF_001325-1337. The Agreement restricts Plaintiffs from promoting on any non-Streamate related websites. Ex. B, Agreement at DEF_000005 § (J)(5). Plaintiffs are expressly prohibited from ███████████████████████████████ ██████████████████████████████████████████ Ex. G, Compliance Handbook at DEF_001327. This means that Streamate performers are

prohibited from wearing clothing that would reflect either their Instagram handle or Only Fans information on their clothing, by way of example only. Ex. D, Tomasello Tr. 272:15-20. In that circumstance, Defendants' Compliance Department members are to ████████████████████████████████████████████ ████████████████████████████ Ex. G, Compliance Handbook at DEF_001326.

████████████████████████████████

████████████████████████████████

██████ ████████████████████████████

██████████████ Ex. G, Compliance Handbook at DEF_001329. There are strict directions to the Compliance Department for how to assess whether alcohol is to be consumed and what to do about it if it is:



Ex. G, Compliance Handbook at DEF_001329.

This is a rule unique to Streamate; it is not a legal requirement. And Plaintiff Tomasello testified she has observed performers at strip clubs consume alcohol, which makes it clear that Defendants' rules show the right to, and exercise of, control over their employee-Performers. Ex. D, Tomasello Tr. 271:19-21.

███████████████████████████████████████████████

████████████████████████████ which may be subject to discipline depending on the clearly defined framework determined solely by Defendants. Ex. G. Compliance Handbook at DEF_001334-35. █████████████████████████

█████████████████████████████████████████ Ex. G, Compliance Handbook at DEF_001334; Ex. C, Glogowski Tr. 29:3-5 (Q. "And the Compliance Specialist[s] also handle performer discipline, correct? A. Correct."). "If rules are broken then the performer is subject to a variety of disciplinary action." Ex C, Glogowski Tr. 29:8-9. There are strict instructions for how Compliance is to handle certain occurrences, █████████████████████ ███████

██████████████████████████████████████████

████████████ Ex. G, Compliance Handbook at DEF_001332. Ultimately, Defendants have the final say, and the only say, in whether a Performer is disciplined and the extent of it. Defendants – in their sole discretion – may warn the Performer of a violation, suspend a performer's account, or close the account, i.e., terminate a Performer. Ex. F, Streaming Rules FAQ at DEF_000701-DEF_000708.

10

These rules are contained in the Agreement and Code of Conduct. https://www.streamatemodels.com/docs/code-of-conduct (last visited Aug. 5, 2024). Streamate can change the rules in its sole discretion. *Id.* at § N ("We reserve the right to add to or amend any rule/guideline as it becomes necessary."); Ex. C, Glogowski Tr. 62:16-22 (Performer Code of Conduct in conjunction with Performer Agreement sets forth all the rules that are applicable to performers on Streamate).

Defendants are always watching Plaintiffs for compliance with their rules. Importantly, since 2021, Defendants monitor each and every stream on the Streamate platform. Ex. C, Glogowski Tr. 26:8-13 ("Each and every stream is monitored"); 32:17-33:24 ("content monitoring occurred" before then). The Agreement also allows Defendants to capture biometric data from Plaintiffs; to use their images and videos "for Artificial Intelligence, including Machine learning both to train and to detect . . . if a room is empty, etc." FAC, ECF No. 29 ¶¶ 22-23; Ex. B, Agreement at DEF_000005 §§ (C), (G); Answer, ECF No. 30 ¶ 23.

## III.  ARGUMENT

### A.  The Proposed Class

Plaintiffs seek certification of the following Class:

> All persons who, at any time from August 6, 2019 continuing through entry of judgment in this case, worked as Performers for ICF Technology, Inc. and/or Accretive Technology Group, Inc. in New Jersey and were classified as independent contractors under their Performer Agreements.

11

## B.    Class Certification is Proper Under Rule 23(a)

To certify a class, a plaintiff must first satisfy the four elements of Rule 23(a). The certification requirements under Rule 23(a) are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015).

A plaintiff has the burden of proving by a preponderance of the evidence that all requirements of Rule 23 are met. *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2009). The question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *In re Hydrogen Peroxide*, 552 F.3d at 318. Plaintiffs have established all the requirements in Rule 23(a), as set forth below.

### 1.    The Proposed Class is Sufficiently Numerous

The first requirement a plaintiff must meet under Rule 23(a) is numerosity. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). There is not a specific threshold number needed to satisfy the numerosity requirement. Instead, the individual facts of a given case must be examined. *Casco v. Ponzios RD, Inc.,* 2018 U.S. Dist. LEXIS 73869, at *8 (D.N.J. Apr. 29, 2018) (citing *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330, (1980)). In the Third Circuit, a plaintiff who demonstrates that the potential number of plaintiffs

12

exceeds 40 satisfies the numerosity requirement. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016)

Defendants have acknowledged, and their payroll and time keeping records reflect, that the number of class members during the relevant time period exceeds 280 performers.[1] *See* Declaration of Charles J. Kocher, Esq. ("Kocher Decl.") at ¶ 11. The exact number of Class Members is contained in Defendants' common payroll and timekeeping data. Plaintiff has met the numerosity requirement.

### 2.    Plaintiffs' Claims Present Questions of Law and Fact Common to the Class

Commonality exists under Rule 23(a) "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Reyes*, 802 F.3d at 486. "Commonality does not require perfect identity of questions of law or fact among class members." *Id.* Rather, "a court's focus must be on whether the defendant's conduct is common as to all class members." *Id.* The commonality "bar is not a high one," *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013), and "is easily met." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

Plaintiffs have met this low bar. This is because an overarching threshold question of law unites the Class: whether Performers were properly classified as

---

[1] The New Jersey Supreme Court in *Maia v. IEW Constr. Grp.*, 257 N.J. 330 (N.J. 2024) held that New Jersey employees cannot recover damages for alleged unpaid wages prior to August 6, 2019.

independent contractors? This common misclassification question satisfies Rule 23(a)(2). *See Reyes*, F.3d at 486 ("even a single common question will do.") (citing *Wal-Mart Stores, Inc. v. Dukes*, 56 U.S. 338, 359 (2011)); *Hargrove*, 2023 U.S. App. LEXIS 14553 at *6 (citing *Williams v. Jani-King of Philadelphia Inc.*, 837 F.3d 314, 321 (3d Cir. 2016) (affirming a class certification relating to whether drivers were properly classified as independent contractors in light of a common corporate policy and notwithstanding differences among class members and finding "[t]he ABC test often turns on evidence of an employer's policies and practices, and so often presents a common issue")). "Plaintiffs are required only to show that they 'can win their case based on evidence common to the class,' not that they will." *Hargrove*, 2023 U.S. App. LEXIS 14553, at *7 (citations omitted).

Common questions also extend to Defendants' payment practices. Defendants' admitted policy of not paying their Performers while in the "free chat." The same is true regarding Defendants' policy of retaining 65% of Performer tips/ Gold. Both common policies are admitted in Defendants' Answer, and are equally applicable to all Class Members. Answer, ECF No. 30 ¶¶ 15, 31. This is precisely the type of unifying thread that satisfies Rule 23(a)(2). *See Williams*, 837 F.3d at 325 ("misclassification claim can be resolved by the evidence that is common to the class"); *Carr v. Flowers Foods, Inc.*, No. 15-6391, 2019 U.S. Dist. LEXIS 77541, at *29, 53 (E.D. Pa. May 7, 2019) ("Here, as in *Williams*, the central classification issue

is provable on a class-wide basis through common evidence" and "the named plaintiffs for each state class and all class members work in the same capacity, as distributors [of bread]; have signed Distributor Agreements; perform the same functions; and are subject to many of the same Flowers policies. . . . Accordingly, commonality is satisfied."); *Hart v. Rick's Cabaret Int'l Inc.*, 09 Civ. 3043, 2010 U.S Dist. LEXIS 137129, at *17 (S.D.N.Y. Dec. 20, 2010) (certifying class of exotic dancers after finding commonality based upon defendants' "policy of characterizing entertainers as independent contractors, rather than employees.").

Further, "Rule 23(b)'s predominance requirement incorporates Rule 23(a)'s commonality requirement because the former, although similar, 'is far more demanding than the latter.'" *Renig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d. Cir. 2018) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004)). As set forth below *infra* Section C.2, the related predominance requirement is satisfied. Plaintiffs have established that a single common threshold question of law unites the Class: whether Plaintiff and Class Members were improperly classified as independent contractors. If that common question is answered in the affirmative, Defendants are liable to all Class Members for unpaid wages for time spent in the free chat and for unlawfully withheld tips, among other measures of damages available to employees. Accordingly, Rule 23(a)(2) is satisfied.

### 3. Plaintiff's Claims are Typical of Those of the Class Members

Typicality is established if a claim "arises from the same event or practice of course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Baby Neal*, 43 F.3d at 58. The typicality requirement is "is intended to prevent certification when 'the legal theories of the named plaintiffs potentially conflict with those of the [class] absentees." *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 133 (3d Cir. 2022) (citations omitted). The threshold for satisfying the typicality requirement is low. *Barr v. Harrah's Entertainment, Inc.*, 242 F.R.D. 287, 292 (D.N.J. 2007). The question is whether the plaintiff's claims are typical of the class members' claims to ensure plaintiff's incentives align with, rather than conflict with, those of the class. *See Beck v. Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006). "In instances where it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong presumption that the claims of the representative parties will be typical of the absent class members." *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 140 (D.N.J. 2002).

Here, typicality is established due to the uniform treatment of Plaintiff and the Class Members by Defendants. They are all classified as independent contractors pursuant to a common Agreement. They are subject to the same rules, policies, and procedures enacted by Defendants. Ex. C, Glogowski Tr. 44:15-17. They are all paid in the same manner, as reflected in Defendants' own payroll data. Kocher Decl. ¶

16

11. These payment practices apply equally to all performers. Ex. A, Rekevics Tr. 69:11-17. Defendants admit in their Answer that they do not pay for time working the free chat and that they also retain a portion of their tips. And while the actual amount of damages may vary by Class Member, the *fact of damage* is identical. *See Hargrove v. Sleepy's LLC*, 974 F.3d 467, 481 (3d Cir. 2020); (individual damages determination does not defeat class certification); *Neale v. Volvo Cars of North Am., LLC*, 794 F.3d 353, 375-76 (3d Cir. 2015) ("[r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal.") (citations omitted). Plaintiff was harmed in the same way and her claims are based on the same legal theory as all Class Members. *See Zinberg v. Washington Bancorp, Inc*, 1385 F.R.D. 397, 407 (D.N.J. 1990). If Plaintiff wins on the merits, all Class Members will be entitled to unpaid wages and tips owed to them. The typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Plaintiff and Class Counsel Will Fairly and Adequately Represent the Class

Plaintiff and Class Counsel will fairly and adequately represent the Class. "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975). All in all, "this requirement is to ensure that there are no conflicts of interest between the named parties and those

they seek to represent." *Casco*, 2018 U.S. Dist. 73869, at *11 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 625).

*First*, Plaintiffs' attorneys are qualified, experienced, and able to conduct this litigation. Plaintiffs' attorneys are knowledgeable in matters of employment law and class actions. *See, e.g.*, *Hall v. Adelphia Three Corp.*, No. 1:21-cv-01106 (D.N.J. 2024) (approving $900,000 class settlement for wage violation under FLSA and New Jersey Law); *Caddick v. Tasty Baking Co.*, No. 2:19-cv-02106, 2021 U.S. Dist. LEXIS 206991, at *13 (E.D. Pa. Oct. 27, 2021) (approving $3.15 million class settlement for wage and hour claims under New Jersey, Pennsylvania, Delaware, Maryland law and FLSA); *Crawford v. FHG Realty Urban Renewal LLC*, (D.N.J. Mar 15, 2019) (approving $525,000 class settlement for wage violation under FLSA and New Jersey law); *Carroll v. Stettler*, No. 10-2262, 2011 U.S. Dist. LEXIS 121171, at *8-9 (E.D. Pa. Oct. 19, 2011) (appointing Charles J. Kocher as class counsel and certifying class).

*Second*, there is no evidence of any conflicts of interest between Plaintiff and members of the Class. Plaintiff and the Class Members were all misclassified and denied the minimum wage and the tips they earned. There is no variation between them, and there is no evidence Plaintiff is seeking to maximize her own recovery at the expense of the class. *See Hart*, 2010 U.S Dist. LEXIS 137129, at *19 (certifying class of exotic dancers in misclassification case and finding adequacy where "no

credible claim that" plaintiffs' interests were "antagonistic" to class). Plaintiff brings the same claims as the other Class members who all benefit from this litigation. Plaintiff has worked with her counsel to advance the interests of the class by: (i) sharing information with her counsel regarding Defendants' unlawful practices; (ii) responding to discovery requests; and (iii) testifying at her deposition for a full day. Ex. D. As such, Plaintiff has demonstrated her commitment to prosecuting this case on behalf of the proposed Class. There are no conflicts of interest. Accordingly, Rule 23(a)(4) is satisfied.

### C.    Class Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires a plaintiff demonstrate (1) common questions of law or fact must "predominate over any questions affecting only individual members" and (2) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to these findings are: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability/undesirability of concentrating the litigation in the particular forum; and (D) the likely difficulties in managing a class action. *Id.*

### 1.    The Proposed Class is Ascertainable

A plaintiff must also propose a class definition that is "readily ascertainable based on objective criteria." *Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437, 438 (D.N.J. 2009). A plaintiff seeking certification under Rule 23(b)(3) must prove by a preponderance of the evidence that the proposed class is ascertainable. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is "defined with reference to objective criteria"; and (2) there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163 (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 355 (3d Cir. 2013)). Both requirements are met here. The proposed Class is defined with objective criteria. Defendants maintain and have produced payroll and timekeeping records for each Class Member, so there is a reliable and administratively feasible mechanism for the inclusion of members within the Class. *See Ramcharan v. A.F.L. Quality, Inc.*, No. 1:12-cv-07551, 2014 U.S. Dist. LEXIS 124441, at *12 (D.N.J Sep. 5, 2014) (class is ascertainable based upon available payroll data). Defendants also made the decision to stop any new New Jersey Class members from joining the Streamate platform "in response to this litigation" and so they know exactly who is in the Class since they decided to stop it from growing during this litigation. Ex. C, Glogowski Tr. 46:24-48:6.

20

### 2.    Common Issues Predominate

The "predominance test asks whether common issues of law or fact in the case predominate over non-common, individualized issues of law or fact. Predominance begins, of course, with the elements of the underlying cause of action." *Neale*, 794 F.3d at 370. A court must look to the elements of the claim to assess whether the class members can prove their claims with evidence common to the class rather than individual to its members. *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 156 (3d Cir. 2023). But while this inquiry involves examining the elements of a plaintiff's claims "through the prism of Rule 23," *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 142 (D.N.J. 2009) (quotations omitted), Rule 23(b)(3) "does ***not*** require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class-wide proof." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (cleaned up). Rule 23(b)(3) merely requires "that common questions predominate over any questions affecting only individual class members." *Id.* When common issues overwhelm individual ones, predominance is satisfied. *Neale,* 794 F.3d at 371.

Additionally, in *Mendoza v. La Belle Farm. Inc.*, the court found that where the issues to be litigated included "whether class members . . . were supposed to be paid the minimum wage as a matter of law and were not" was "about the most perfect questions for class treatment." 239 F.R.D. 363, 373 (S.D.N.Y. 2007); *see also*

*Williams*, 837 F.3d at 321 (affirming finding of predominance in misclassification case because class claims could be proven through common evidence of control); *Rivet v. Office Depot, Inc.,* 207 F. Supp. 3d 417, 431 (D.N.J. 2016) (finding predominance of common questions in exemption misclassification case); *DeGidio v. Crazy Horse Saloon & Rest., Inc.*, 4:13-CV-02136, 2017 U.S. Dist. LEXIS 219018, at *44 (D.S.C. Jan. 26, 2017), *aff'd and remanded sub nom. Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135 (4th Cir. 2018), *cert. denied sub nom. Crazy Horse Saloon & Rest., Inc. v. Degidio*, 138 S. Ct. 2666 (2018) (finding predominance in exotic dancer misclassification case where "Defendant applies the same pay policies and practices to Plaintiff and each of the class members"); *Goldman v. Radioshack Corp.*, Civ No. 03-0032, 2005 U.S. Dist. LEXIS 8742, at *14 (E.D. Pa. May 10, 2005) (holding that predominate legal issue in action is whether managers were wrongfully classified as exempt and denied overtime wages); *Ansoumana v. Gristedes Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001) (finding predominance where central issues in case were whether plaintiffs were employees or independent contractors, and the "consequences of the resolution of that issue in relation to minimum wage").

Here, one common question predominates over all others in this case: are the hundreds of Performers who Defendants classified as independent contractors really employees? Defendants concede that all Class Members were subject to the same

rules and were all wages for time working in the free chat space. Defendants also concede that a percentage of Plaintiff's and the Class Members' tips were withheld. This is evidenced by Defendants' own records, which are maintained for all Class Members. Kocher Decl. ¶ 12. Since the principal question in this case is whether or not Defendants misclassified all performers as independent contractors, the predominance requirement is met.

The resolution of this common question applies to all Class Members equally and can be decided by the Court in one fell swoop, making certification appropriate. *Univ. of P.R. Ret. Sys. v. Lannett Co.*, No. 21-3150, 2023 U.S. App. LEXIS 9143, at *11 (3d Cir. April 18, 2023) (single theory of liability tied to a single theory of damages satisfies predominance analysis.). If Plaintiff is an employee under New Jersey law, so are all Class Members, entitling them to minimum wage back pay and the full amount of the tips they earned while streaming. Any individual damage calculations will not prevent a finding of predominance. *Neale*, 794 F.3d at, 375-76 ("[r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal.") (citations omitted). Importantly, the predominating question here stems directly from Defendants' policy of classifying their Performers as independent contractors. This common policy alone, and the class-wide consequences of same, satisfies the predominance requirement.

To be sure, the common policies applicable to Class Members go beyond Defendants' payment practices, and extends to their control of Performers, the key consideration in determining whether someone is an employee in New Jersey. Indeed, New Jersey law **presumes** an "individual is an employee unless the employer can make certain showings regarding the individual employed." *Hargrove v. Sleepy's, LLC*, 220 N.J. 289, 305 (2015). Simply said, if the purported employer cannot show an individual "has been and will continue to be free from control or direction over the performance of such service," then that individual will be deemed an employee. *Id.* Plaintiff has made a showing of control here through common evidence that encompasses the Class as a whole. Defendants monitor each and every stream on the platform. Ex C, Glogowski Tr. 26:10-13. Defendants subject Performers to discipline "if rules are broken." Ex C, Glogowski Tr. 29:8-9. Defendants maintain detailed records of Performer infractions, and have the discretion to discipline a performer, or not, ***up to and including termination***:

> We keep records of every violation issued against the performer and you can have nudity below the wait in 2018, one in 2020 and one in 2024 and absolutely nothing will happen to you given the amount of time that has passed between incidents. ***If you have nudity below the waist on Monday, Tuesday, Wednesday, you're gonna be terminated.***

Ex C, Glogowski Tr. 66:15-20 (emphasis added).

The uniform application of Defendants' policies to all Class Members further establishes the predominance requirement. *See Hargrove,* 2023 U.S. App. LEXIS 14553, at *7 ("Common corporate policies … carry great weight for certification purposes, and *predominance is rarely defeated in cases where such uniform policies exist.*") (emphasis added) (quoting *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 844 (9th Cir. 2019)); Ex C, Glogowski Tr. 44:15-45:3.

Finally, Plaintiffs have the ability to use common evidence to prove Class Members' claims and the corresponding damages as a matter of just and reasonable inference. Defendants' own payroll and time records capture the time worked and the amount Defendants paid them. This allows Plaintiff to demonstrate the amount of time Defendants failed to pay Plaintiff and Class Members while they worked in the free chat space. Indeed, through Defendants' instruction, Plaintiffs have already established the road map for determining the amount of time spent in free chats. This is knowable by adding the amount of time in "Gold shows" and "total paid hours" and subtracting that amount of time from the "total streamed hours." This common evidence will be probative of amount of time spent by Plaintiff and Class Members in the free chat on a class-wide basis.

The question of whether Defendants misclassified Plaintiff and Class Members as independent contractors applies equally to all members of the Class and

can be adjudicated in one stroke. Therefore, Plaintiff has satisfied the predominance requirement of Rule 23(b)(3).

### 3.    Class Action Superiority

In order to establish the superiority prong, Plaintiffs "must demonstrate that resolution by class action will achieve economies of time, effort, and expense, and promote . . . uniformity of decision to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results." *King Drug Company of Florence Inc. v. Cephalon, Inc.,* 309 F.R.D. 195, 214 (E.D. Pa. 2015) (citing *Amchem*, 521 U.S. at 615). Rule 23(b)(3) identifies four (4) factors pertinent to the superiority determination: (1) the interest of individual class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any previously commenced litigation concerning the controversy; (3) the desirability or undesirability of concentrating the litigation of the claims in a single forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). These factors weigh in favor of class treatment.

***First***, there is little interest for individual class members in controlling the prosecution of separate actions. While the ***aggregate*** damages of the Class are significant, the amount of unpaid regular and overtime wages to each individual in the Class may be relatively small. This renders individual litigation economically infeasible, as the costs would likely outweigh the potential recovery. *See, e.g.*, *In re*

*Wafarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) (finding superiority where each class member had a "small claim in relation to the cost of prosecuting a lawsuit"); *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015). In cases like this, courts often find that the "relatively small amount at stake for each claimant vitiates any argument that each has an interest in controlling the prosecution of the case." *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 191 (D.N.J. 2003) (citations omitted); *c.f. D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) ("It is appropriate for the court to consider [(for Rule 23(b)(3) classes)] "inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually.").

**Second**, Plaintiff is not aware of any Class Members that have commenced individual actions concerning this controversy.

**Third**, concentrating these claims in a single forum is desirable because it will avoid the risk of inconsistent judgments and inefficiencies attendant to a multiplicity of proceedings. Many of the courts considering whether class actions were the superior resolution device in exotic dancer misclassification cases have answered the question in the affirmative. In *Hart v. Rick's Cabaret Int'l Inc.*, a misclassification case involving exotic dancers, the court found that a class action was the best available method of adjudicating the claims because: (1) "the value of

27

each individual claim is small compared to the possible costs associated with pursuing it;" (2) the "assumed socioeconomic status of the proposed class members;" and (3) because "members of the putative class who currently work as [dancers] for the defendants may be reluctant to pursue any claims against the source of their current income." 2010 U.S Dist. LEXIS 137129, at 22-23.

This Court provides a fair and convenient forum for this litigation for Plaintiff, Defendants, and the proposed Class Members because it promotes judicial economy while providing a local forum for the parties to assert their rights. *See Casco*, 2018 U.S. Dist. LEXIS 73869, at *13. In fact, class treatment may even serve as beneficial to Defendants because they must only "defend against plaintiff's allegations in one proceeding" and therefore not "fear individual actions with respect to the same issues ad infinitum." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 489, (W.D. Pa. Nov. 5, 1999); *Hargrove*, 2023 U.S. App. LEXIS 14553, at *7 ("A common resolution will be no less beneficial to Defendants, who may defeat the misclassification claims of all 111 class members in one trial."). The relative costs for all parties in proceeding in this forum are minimized by certifying the Class.

**Fourth**, there are no foreseeable difficulties in managing this case as a class action. The questions of employment misclassification, liability, and damages can be accomplished through common evidence. And similar misclassification cases involving exotic dancers have been certified as litigated classes. *See Doe v. Banc,*

*Jack & Joe LLC*, Civ. No. 17-cv-03843, 2020 U.S. Dist. LEXIS 95129 (D.N.J. June 1, 2020)*; Verma v. 3001 Castor, Inc.*, Civ. No. 13-3034, 2016 U.S. Dist. LEXIS 164026 (E.D. Pa. Nov. 29, 2016); *Hart*, 2010 U.S Dist. LEXIS 137129, at *17.

The superiority requirement of Rule 23(b)(3) is established.

### 4.    Rule 23(g) Appointment of Class Counsel is Warranted

When a court certifies a class, it must appoint class counsel. Fed. R. Civ. P. 23(g).  The factors it must consider are: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id*.

As set forth above, McOmber McOmber & Luber, P.C. should be appointed as Class Counsel as it has diligently investigated and pursued the claims in this litigation and has extensive experience managing and litigating complex class actions. The undersigned was Class Counsel in the $3.15 million Tastykake settlement in the Eastern District of Pennsylvania, *Caddick v. Tasty Baking Company*, 2:19-cv-02106, as well as in *Hall v. Adelphia Three Corp.*, 21-cv-1106 (D.N.J.)

## IV.    CONCLUSION

For the reasons above, Plaintiffs request that the Court certify the Class; appoint Plaintiff Mia Tomasello as Class Representative for the Class; appoint McOmber McOmber & Luber, P.C. as Class Counsel; and authorize the dissemination of Class notice substantially in the form of Ex. H. A proposed order follows.

Dated: August 9, 2024                Respectfully submitted,

                                     /s/ Charles J. Kocher
                                     Charles J. Kocher, Esq. (NJ ID 016952004)
                                     Tyler J. Burrell (NJ ID 377942021)
                                     Gaetano J. DiPersia (NJ ID 442152023)
                                     McOMBER McOMBER & LUBER, P.C.
                                     50 Lake Center Drive, Suite 400
                                     Marlton, NJ 08053
                                     (856) 985-9800
                                     cjk@njlegal.com
                                     tjb@njlegal.com
                                     gjd@njlegal.com
                                     *Attorneys for Class Representative Plaintiff Mia Tomasello, on behalf of herself and all others similarly situated for the Rule 23(b)(3) Class and FLSA Collective*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2024, I caused a copy of the foregoing to be filed electronically and served via ECF on all parties indicated on the electronic filing receipt.

By: <u>*/s/ Charles J. Kocher*</u>
Charles J. Kocher, Esq.
McOMBER    McOMBER    &
LUBER, P.C.
50 Lake Center Drive, Suite 400
Marlton, NJ  08053
(856) 985-9800
cjk@njlegal.com